UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SHANE W.,[1]

        Plaintiff,

   v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:19-CV-01901-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Shane W. seeks judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, that decision is REVERSED and this matter is REMANDED for the immediate award of benefits.

    Plaintiff protectively filed for SSI on March 31, 2017, alleging disability beginning on March 31, 2017. Plaintiff's application was initially denied on July 18, 2017, and upon reconsideration on September 1, 2017. Plaintiff requested a hearing before an Administrative

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

Law Judge ("ALJ"), which took place on November 29, 2018. At that hearing, plaintiff and a vocational expert testified. The ALJ issued a decision on January 10, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 13. The Appeals Council denied plaintiff's request for review on September 18, 2019. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 31, 2017. Tr. 15. At step two, the ALJ determined plaintiff had the following severe impairments: autism spectrum disorder, ADHD, depressive disorder, learning disorder, and anxiety disorder. Tr. 15.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 15.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found he "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, routine tasks, with GED's not exceeding 2." Tr. 17.

At step four, the ALJ found plaintiff had no past relevant work. Tr. 21. At step five, the ALJ found that, considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. Thus, the ALJ concluded plaintiff was not disabled. Tr. 22.

## DISCUSSION

Plaintiff contends the ALJ erred by improperly discounting his subjective symptom testimony and rejecting the testimony of Dr. Weniger and lay witnesses.

I.  **Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect

your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."

The decision under review is dated January 10, 2019.  Tr. 25.  Therefore, SSR 16-3p applies.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  Tr. 17.  However, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.*

5 – OPINION AND ORDER

The record contains evidence that plaintiff's mother removed him from school in the second grade and kept him socially isolated until she passed away in 2015 when plaintiff was 32 years old. Plaintiff lived alone with his mother in a small apartment and had limited contact outside of the home; they were "never apart." Tr. 58, 476. Plaintiff's mother would not allow him to interact with peers, and he rarely left the residence. Tr. 479. Plaintiff's mother attempted to homeschool plaintiff but it was "too stressful," so "she just let [plaintiff] figure it out on [his] own." Tr. 480.

Plaintiff's mother was reportedly schizophrenic and believed everyone was out to get her. Tr. 58, 477. Being around people "set [her] off." Tr. 478. Plaintiff did not work because his mother was "very attached and afraid of him working. Tr. 480. Plaintiff and his mother subsisted on her social security disability payments. Tr. 477.

Following his mother's death, plaintiff became homeless and showed up "distraught" at a church in Tigard, Oregon, where he had lived during a portion of his childhood. Tr. 477. When plaintiff applied for social security benefits, he was residing in the back of the church, and bathing twice a week at parishioners' homes. Tr. 155, 470. Plaintiff does not use drugs and does not drink except at holidays and to take communion. Tr. 41.

Plaintiff sought assistance with the state Office of Vocational Rehabilitation Services. In April 2016, the state agency obtained an evaluation for plaintiff with Robert Weniger, Psy.D., a board certified clinical neurologist, for purposes of better understanding plaintiff's functional limitations in relation to employment. Dr. Weniger diagnosed plaintiff with autism spectrum disorder, ADHD, and an unspecified anxiety disorder. Tr. 305. Testing revealed plaintiff has a low average IQ (87, 19th percentile). Tr. 483. He excelled in some areas of testing but was borderline in others, including working memory (6th percentile) and processing speed (3rd

percentile). Tr. 483. He also scored in the borderline range (9th percentile) for word list recall and story memory task, Tr. 484, and his adaptive skills spanned the borderline to extremely low ranges. Tr. 486. Plaintiff's reading and math skills tested at eighth grade and fifth grade levels, respectively. Tr. 483.

Dr. Weniger "maintained concern" about plaintiff's "job readiness," and opined that vocational success would be contingent upon effectively dealing with a number of significant impediments, including "appropriate accommodation of his cognitive challenges, effective management of his mood, improved interpersonal skills, enhanced motivation, and increased stability in his personal life." Tr. 491. Dr. Weniger concluded that, "[g]iven the breadth of [plaintiff's] impediments, his vocational prognosis appeared guarded," Tr. 491, and suggested that plaintiff may be eligible for disability benefits. Tr. 493.

A second evaluation conducted by Dr. Patrick Ethel-King, Ph.D. in June 2017 confirmed plaintiff's diagnosis of autism. Dr. Ethel-King also diagnosed plaintiff with depressive disorder. Tr. 535. This evaluation was ordered by the Oregon Department of Human Services for purposes of determining disability benefits. Tr. 532.

In May 2017, with significant assistance from state vocational rehabilitation services, plaintiff obtained a part-time position, his first job ever, in a sandwich shop. Tr. 311, 341; *see* Tr. 361 ("Client has lived in isolation for most of his life and has a total lack of work experience."). Plaintiff worked only two hours per day, Tr. 345, 533, but vocational rehabilitation specialists considered even that to be quite a feat. *See* Tr. 352 ("Awesome . . . !! What a success. Thank you for sticking with this. Shane has had quite the long haul.").

The state agency contracted with Rise Employment Services to assist in providing services for plaintiff. Tr. 284, 311. The sandwich shop that hired plaintiff had employed Rise

7 – OPINION AND ORDER

clients in the past. Tr. 312. The Rise counselors who assisted plaintiff spent a great amount of time helping him through every step of the process of getting a job, including educating him about realistic job prospects, researching openings, filing out applications, visiting job sites with plaintiff, conducting a mock interview, selecting and purchasing work clothes, and coaching him at the sandwich shop when he began working. Tr. 345; *see* Tr. 391 (observing vocational exploration was necessary because plaintiff lacked "a sense of what working is about").[2] In fact, when plaintiff began working at the sandwich shop, a Rise counselor visited the job site at least 15 times over the course of approximately two and a half months to check in with him and provide him with coaching. Tr. 326-27.

Jessica Culp, the manager of the sandwich shop, completed a questionnaire in October 2018. Tr. 463. Although plaintiff had been working at the sandwich shop for some time, his hours had increased to only 2.5 hours per day. Tr. 464. Culp confirmed that plaintiff had been hired as part of a "work assistance program," and explained that he required more coaching than other crew members on where to focus his energy and lacked autonomy in the workplace. Tr. 464. While plaintiff did his best to relate to everyone, he had a low threshold for social exhaustion and sometimes asked to leave work before his shift was completed. Tr. 464-65. Although the quality of plaintiff's work was generally good, he produced at a slower rate than other employees even though his workload was less. Culp did not believe plaintiff could complete the full duties of an employee in the shop. Tr. 465.

---

[2] Plaintiff had unrealistic ideas about how he could support himself, believing he could find work as a freelance photographer, Tr. 403, artist, or inventor. Tr. 443-44; *see* Tr. 444 (plaintiff "produced a drawing of a square to demonstrate his artistic prowess"). He claimed he invented the Subaru Baja and compared himself to Tony Stark. Tr. 443.

8 – OPINION AND ORDER

The ALJ found that the "medical evidence does not support [plaintiff's] testimony." Tr. 17. In particular, the ALJ observed that the "minimal treatment notes entered into the record, collectively dated between March 2016 and August 2016 do [not] reflect any treatment for his allegedly disabling impairments, such as use of medications typically prescribed for ADHD." Tr. 17. But, clearly, one of the reasons that the treatment records in this case are so minimal is because plaintiff's mother kept plaintiff in isolation for decades, ever since he was a young child. For the same reason, plaintiff's records do not contain a professional psychological evaluation until 2016 and 2017. And while plaintiff's treatment records may be slim, he was clearly destitute and, at the time of the hearing, he did not believe he "currently" had health insurance.[3] Tr. 34. "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir. 1995).

The ALJ also observed that plaintiff "has never taken any medications for [ADHD], because he felt they 'can be risky.'" Tr. 18. The ALJ apparently relies on Dr. Weniger's report, which states, "He has never taken medication considered efficacious for treating ADHD 'because that can be risky.'" Tr. 477. Importantly, however, there is no indication in the record that plaintiff was ever prescribed medication for ADHD. Thus, the ALJ improperly faulted plaintiff for refusing to take ADHD medication that had never been prescribed. Moreover, the ALJ's reasoning does not address plaintiff's uncontroverted autism diagnosis and what effect any hypothetical ADHD medication would have had on his autism symptoms. Additionally,

---

[3] Plaintiff testified that he was not "currently" insured although he "used to" be. Tr. 34. The record contains some indication that plaintiff had health insurance coverage under the Oregon Health Plan one month before the hearing. Tr. 458. In any event, even if plaintiff had health insurance, the ALJ improperly discredited plaintiff's testimony for the other reasons discussed in this decision.

9 – OPINION AND ORDER

plaintiff's ambivalence about taking medication must be read in the context of his isolated upbringing by a mother who distrusted all external influences and herself suffered from mental health issues for which she apparently refused treatment.

The ALJ further found that while plaintiff reported experiencing difficulty in crowded social environments, he "maintains social relationships through his church and volunteers at his church's food pantry." Tr. 18. This ignores significant evidence to the contrary. For example, there is evidence that plaintiff's behavior with one of the vocational rehabilitation staff members "got out of hand" due to the fact he called her 4 days a week, 10 times a day, and even in the middle of the night. Tr. 400, 403. Notes indicate concern that if plaintiff obtained a job, his "relationship with an employer could be destroyed" by such behavior. Tr. 400. Plaintiff's actions caused state agency staff to be "very hesitant to advocate to an employer of his stability and reliability" and to conclude it was not "a good choice to begin job development at this point." Tr. 403. Other evidence shows that plaintiff struggles to connect with people, although he tries to be considerate and well-liked, Tr. 471, and that when plaintiff engages in conversation, it becomes incessant, nervous chatter. Tr. 473.

Finally, the ALJ relied on evidence that plaintiff volunteered at his church and worked part-time. But, as discussed, plaintiff's minimal part-time employment of 2.5 hours per day is not reasonably indicative of his ability to perform full-time work. The same is true for plaintiff's volunteer church work that he engaged in once or twice a week, Tr. 470, and which involved "short" tasks such as setting up and tearing down signs, cleaning, arranging chairs, and helping people load groceries in their car. Tr. 436, 473, 480. Also, the record shows that plaintiff was distracted when performing this volunteer work and his successful performance depended on his emotional state and stress level. Tr. 473.

In sum, the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence, to reject plaintiff's testimony.

**II.     Lay Opinion Testimony**

The ALJ also rejected the lay witness statements of Sally Gradin and Forrest Cammack because they were "further persuasive evidence that the claimant possesses the ability to perform fulltime work activity consistent with the residual functional capacity found above." Tr. 21. The ALJ cited to reports by Gradin and Cammack that plaintiff participated in church volunteer activities, went to the library, listened to music, watched movies, used public transportation, exhibited independent self-care, went shopping, and performed household chores. Tr. 20-21.

But the ALJ ignored those portions of the record, including statements by Gradin and Cammack, that showed plaintiff's activities were in fact very limited. Plaintiff's meal prep was minimal and largely consisted of making prepared foods, like warming soups or hot dogs. Plaintiff could not follow recipes or other written directions. He could not operate a computer except to turn on videos. Plaintiff was overwhelmed by paperwork. He could not drive, and it was opined that he will never have the capacity to obtain a driver's license. Plaintiff had to be reminded to bathe and was unaware of his body odor. Plaintiff could do household chores, such as laundry, taking out the trash, and a limited amount of cleaning and vacuuming. However, he did not do these chores often, and either barely touched a task or was overly meticulous and spent hours on it. And, as for the fact plaintiff took public transportation, went to the library, and watched movies, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Smolen*, 80 F.3d at 1284 n.7.

The ALJ also ignored Gradin and Cammack's observations regarding plaintiff's mental condition. Gradin, who happens to be a CSWA, observed that plaintiff displayed the anxiety,

rigidity, and social struggles classic of Asberger's syndrome. Tr. 466. Plaintiff had low tolerance for stress, and attempts to challenge him beyond comfortable work or social skills usually increased his anxiety to a point of rigidity or withdrawal. Tr. 466. "Changes cause excessive anxiety." Tr. 472. When plaintiff became overwhelmed, it impacted him physically to the point of near exhaustion. Even increasing his daily work shift from two to three hours stretched his stress and energy levels. Gradin opined that plaintiff's "expressions are not presented in a manner suggestive of someone looking for opportunity to avoid productivity but with affect and body language congruent with clinically impairing anxiety." She explained his symptoms were "similar to clients [she has] with combinations of high anxiety and low ability to identify the emotional source and healthfully cope." Tr. 466.

Cammack indicated that plaintiff had a "one-track mind" and was "unable to deal with the flexibility that most work environments require." Tr. 200. Cammack observed that plaintiff was "unable to process complicated situations and if faced with a situation he is unfamiliar with, will become easily overwhelmed and shut down." Tr. 200. "While it is possible for him to do simple tasks, like watering plants, most jobs would be difficult if not impossible for him to succeed in." Tr. 200.

The ALJ's failure to consider this evidence is error and not harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

### III. Medical Opinion Testimony

Finally, plaintiff claims the ALJ erred in rejecting Dr. Weniger's opinion.

A.     **Relevant Law**

Plaintiff filed for benefits on March 31, 2017.  For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence under Title II and 20 C.F.R. § 416.920c governs under Title XVI.  *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017).  Under these new regulations, ALJs no longer "weigh" medical opinions but rather determine which are most "persuasive."  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(c).  To that end, controlling weight is no longer given to any medical opinion.  *Revisions to Rules*, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(a), (c)(1)-(5); 20 C.F.R. § 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(1).  "[C]onsistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

13 – OPINION AND ORDER

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations require the ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(a), (b); 20 C.F.R § 416.920c(a),(b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

14 – OPINION AND ORDER

B.      **Whether the "Specific and Legitimate" Standard Still Applies**

Under existing Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The regulations pertaining to applications filed before March 27, 2017, set out a hierarchy for treatment of opinion evidence that, consistent with Ninth Circuit case law, gives treating sources more weight than non-treating sources, and examining sources more weight than non-examining sources. *See Standards for Consultative Examinations and Existing Medical Evidence*, 56 Fed. Reg. 36,932, *available at* 1991 WL 142361 (Aug. 1, 1991); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (adopting the "clear and convincing" and "specific and legitimate" standards for rejecting treating and examining source medical opinions); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (holding that "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record).

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations requires re-evaluation of the "specific and legitimate" standard for review of medical opinions. *See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting cases). Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is merely a benchmark against which the Court evaluates that reasoning." *Scott D. v. Comm'r Soc.*

15 – OPINION AND ORDER

*Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

### C.    Analysis

The ALJ rejected Dr. Weniger's opinion because plaintiff's "work activity since May 2017 shows that his limitations are not as great as Dr. Weniger opined them to be." Tr. 19. For the reasons discussed above, this is not a reasonable interpretation of the record, nor is it a conclusion that is supported by substantial evidence. The ALJ also gave weight to the opinions of Dr. Kessler and Dr. Boyd because their finding that plaintiff is not disabled was "consistent with plaintiff's sustained work activity since May 2017." Tr. 20. But, as discussed, based on the record in this case, plaintiff's capacity to work 2.5 hours a day cannot be considered sustained work activity sufficient to establish he is capable of performing full-time work. For these reasons, the ALJ erred in rejecting Dr. Weniger's opinion.

## III.    Credit-as-True Analysis

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler*, 775 F.3d at 1099 (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites

are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ failed to properly evaluate plaintiff's subjective symptom testimony and improperly discounted the testimony of Dr. Weniger and lay witnesses. Moreover, the record has been fully developed. The record is minimal, but that is because of the circumstances of plaintiff's upbringing. Plaintiff has had two thorough psychological evaluations. Thus, there is no reason to remand this case for further development of the record or additional testing.

Finally, if the improperly discredited evidence is credited as true, plaintiff would be entitled to benefits. The evidence in the record establishes that plaintiff meets the paragraph B criteria for autism spectrum disorder, which includes extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. The fact that it took state vocational rehabilitation staff such herculean efforts to help plaintiff find a part-time job where he is capable of working only 2.5 hours a day says it all. When the improperly discredited evidence is credited as true, it is apparent that plaintiff cannot maintain a full-time job due to his mental impairments.

## ORDER

The Commissioner's decision is REVERSED and this matter is REMANDED for the immediate award of benefits.

DATED June 30, 2022.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

17 – OPINION AND ORDER